UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ANDDY MATOS,

                               Plaintiff,

       -against-

DISCOVERY COMMUNICATIONS, LLC n/k/a
WARNER BROS. DISCOVERY, INC.,

                               Defendant.
------------------------------------------------------------------------X

Docket No.:  7:23-cv-2218

**COMPLAINT**

*PLAINTIFF DEMANDS A TRIAL BY JURY*

The Plaintiff, ANDDY MATOS, by her attorneys, Mitchell Pollack & Associates, PLLC, as and for her Complaint in this action against the Defendant, DISCOVERY COMMUNICATIONS, LLC n/k/a WARNER BROS. DISCOVERY, INC. ("Discovery"), respectfully alleges as follows:

## NATURE OF CLAIMS

1.      This action is brought to remedy discrimination on the basis of religion/religious beliefs in the terms and condition of employment and in the creation of a hostile work environment, as well as, retaliation for opposition to unlawful practices, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000, *et. seq.* ("Title VII"); the New York State Human Rights Law, New York Executive Law, §290, *et. seq.* ("the Executive Law"); and any and all other causes of action arising under the federal and state constitutions and any and all federal, state and local laws, based upon facts which are alleged and/or can be inferred from the facts set forth herein.

2.      The Plaintiff seeks injunctive and declaratory relief; monetary relief including, but not limited to:  back pay, front pay, compensatory and punitive damages; bonuses, union benefits, retirement benefits, seniority service credit/pension benefits, and all other benefits of employment, damages for physical injuries and emotional distress, reasonable attorney's fees,

and the costs of this action; and any and all other appropriate legal and equitable relief pursuant to applicable local, state and federal law.

## THE PARTIES

3.      The Plaintiff, ANDDY MATOS ("Matos"), is a Hispanic, Christian female who resides in the State of New York, County of Westchester, in the Southern District of New York.

4.      At all relevant times, the Plaintiff met the definition of an "employee" under all applicable statutes alleged herein.

5.      The Defendant, Discovery, is a foreign business corporation registered to do business in the State of New York, with a principal place of business at 230 Park Avenue South, New York, NY 10003.

6.      Discovery is known as an entertainment company that, among other things, offers cable and satellite television, global streaming, and interactive entertainment to its customers, including a range of channels such as Animal Planet, TLC, the Food Network, HGTV, Investigation Discovery, and the Travel Channel.

7.      The Defendant, Discovery, has employed greater than fifteen (15) employees for each working day, in each of the twenty (20) or more calendar weeks in the current or preceding calendar year and qualifies as an "employer" under local, state and federal laws.

8.      Discovery paid Matos' wages and qualified as Matos' employer pursuant to the definition contained in Title VII and the New York State Executive Law.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 and §1343 and 42 U.S.C. §2000e-5(f)(3) because this action involves federal questions regarding the deprivation of Plaintiff's rights under Title VII.  This Court has supplemental jurisdiction over the Plaintiff's related state court claims arising under the Executive Law and any and all state

and local law pursuant to 28 U.S.C. §1367(a).

10.    Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this District and the Plaintiff resides within the Southern District of New York near the Courthouse in White Plains.

11.    On or about August 2, 2022, the Plaintiff filed a charge of discrimination against the Defendant with the United States Equal Employment Opportunity Commission ("EEOC"), with a request to cross file the charge with New York State Division of Human Rights ("SDHR"), complaining of the religious discrimination, hostile work environment, and retaliation alleged herein.

12.    On or about December 20, 2022, the EEOC issued the Plaintiff, Anddy Matos, a Notice of Right to Sue.

13.    The Plaintiff has commenced this federal lawsuit within ninety (90) days of the Plaintiff's receipt of the Notice of Right to Sue and as a result, the Plaintiff has fully complied with the administrative prerequisites of Title VII and all other applicable statutes.

## FACTUAL ALLEGATIONS

### Matos' Employment at Discovery:

14.    The Plaintiff was hired by the Defendant, Discovery, as a full-time employee on or about October 20, 2018, and her first day of employment was November 12, 2018.

15.    Ms. Matos most recently held the position of Contract Production Coordinator and was affiliated with Animal Planet, Investigation Discovery, and the Travel Channel.

16.    As a Contract Production Coordinator, Matos's duties included, but were not limited to:  tracking deliverables, production contracts, budgets, overages, and communicating fulfillment of production milestones and any production issues/changes to the development,

finance, and production operations teams.

17.     The Plaintiff's job description rarely required personal meetings or face-to-face interactions with Discovery's clients, talent, third-party production companies and/or employees, and, in fact, most of her managers/colleagues worked in different office buildings or out of state.

18.     At the time of her termination, Ms. Matos was earning $61,665.00 per year and she received various employment benefits including, but not limited to, employer sponsored health benefits; dental and vision benefits, retirement benefits, bonuses, disability and life insurance benefits.

19.     Prior to the events that led to the filing this Complaint, Ms. Matos had always met or exceeded the requirements of the position she held at Discovery, and she carried out her duties in an exemplary manner.

20.     The Plaintiff's performance reviews were traditionally positive, she received annual raises and discretionary bonuses on a regular basis, and she was often tasked with training new personnel because she excelled at her position.

21.     As an example, in July 2019, the Senior Director of Production for TLC and MotorTrend recognized Matos for doing "a tremendous job these past few weeks getting up to speed on TLC and MotorTrend shows, and supporting the team" and that her "efforts have been noticed and mentioned by many."

22.     At no time prior to exercising her rights to be exempt from vaccination due to her religious beliefs, did the Defendant have grounds to, nor did it, discipline or take any adverse action toward Ms. Matos.

**The COVID-19 Pandemic and Return to Work Policies:**

23.     In or about March 2020, the global COVID-19 pandemic forced many employers, including Discovery, to shut down their businesses and/or permit employees to work remotely,

and Ms. Matos successfully performed her job duties remotely for well over 18 months, without any interruption or effect on her daily responsibilities.

24.     In July 2021, the Defendant issued a Return to Office FAQ Sheet ("FAQ") to all employees which stated that, at that time, Discovery was "not mandating that people have to be vaccinated, in order to return to the office."

25.     The FAQ discussed optimal work patterns and reflected that if employees were productive working remotely, managers would consider many factors when determining whether an individual could potentially work remotely on a permanent basis.

26.     By email dated August 9, 2021, from President and Chief Executive Officer ("CEO"), David Zaslav, the Plaintiff was notified that Discovery was beginning to open its United States ("U.S.") offices on September 7, 2021, and employees must show proof of vaccination to enter an U.S. office (hereinafter the "Vaccination Mandate").

27.     On or about August 12, 2021, Discovery's Chief People and Culture Officer (hereinafter "HR") issued a company-wide email supplementing the CEO's August 9, 2021 Return to Office strategy and Vaccination Mandate.

28.     In the August 12, 2021 email, Discovery stated that "[e]xemption from Discovery's vaccination requirement may be granted based on valid medical reasons or sincerely held religious beliefs" and that employees requesting to be exempt from the Vaccination Mandate must submit a formal request which would be reviewed internally.

29.     The August 12, 2021 email explained that Discovery was still determining how to handle unvaccinated employees, but Matos was willing to "participate in the rigorous protocols" and Covid-19 testing that the Defendant was requiring prior to entering the office each week.

30.     On or about August 30, 2021, the Plaintiff submitted a letter to Discovery detailing her sincere Christian ideals and the role of God in her life, to exercise her right to be

exempt from vaccination, and it specified her belief that:

     a.     her body is an extension of God's sacred temple;

     b.     the vaccine would tarnish and defile God's temple;

     c.     she is protected from getting COVID-19 due to natural immunity and the reliance upon God's protection;

     d.     she would be intentionally sinning and jeopardizing her relationship with God and her spiritual growth;

     e.     a sin is anything that violates the will and instruction of God and it goes against her conscience and faith to commit sin; and

     f.     she felt spiritually and morally compromised by the mandatory requirements being imposed by Discovery.

31.     Ms. Matos cited scripture from the Bible to support her beliefs and also relayed that she had genuine medical concerns about receiving the vaccination due to her severe allergies to pharmaceuticals, preservatives, metals, pollens, and molds.

32.     On or about September 2, 2021, the Plaintiff obtained a religious exemption form from the Chief People and Culture Office/HR (the "Exemption Form").

33.     On or about September 9, 2021, the CEO and HR conducted an employee town hall event, which was followed by another email which indicated that U.S. employees were required to receive the COVID-19 vaccination by January 1, 2022 or qualify for a religious or medical exemption.

34.     On or about September 10, 2021, the Plaintiff submitted the Exemption Form through the appropriate channels for consideration with a letter explaining her religious beliefs and reasons for requesting the exemption and, at around the same time, she was seeking an accommodation to permit her to continue to work remotely.

35.     The Exemption Form included questions that inquired whether the employee has received any vaccinations and/or taken any pharmaceutical drugs since the age of 18, but expressly stated that the employee should not provide additional information when answering the question.

36.     Denying the Plaintiff the right to clarify or explain her answer was unjust and inequitable, particularly, since the administration of these pharmaceuticals occurred prior to her accepting Jesus Christ as her savior and devoting herself to her faith.

**Vaccination Mandate and Religious Exemption Denial:**

37.     On or about September 23, 2021, Discovery issued a company-wide email reiterating that all employees were required to be fully vaccinated or qualify for a medical or religious exemption by January 1, 2022.

38.     On or about October 20, 2021, the Plaintiff was notified that an additional questionnaire was required to be submitted to further assess her religious exemption request, which simply re-inquired about the Plaintiff's use of over-the-counter medications and pharmaceutical consumption, also without permitting her to explain the response.

39.     On or about November 8, 2021, the Plaintiff received a letter from HR concerning Discovery's decision to deny her an exemption, which did not contain any precise reasons specific to Ms. Matos' exemption request and appeared to be a boilerplate form letter.

40.     Discovery also notified Matos that her work from home accommodation request was being denied, asserting that she was not functioning in a unique and autonomous role.

41.     On November 19, 2021, the Plaintiff participated in a "Zoom" meeting with Traci Logan ("Logan") in the HR Department concerning the rejection of her religious exemption and work from home accommodation requests.

42.     The Plaintiff expressed her disappointment with the position that Discovery (a non-religious organization) was taking with respect to her sincere religious beliefs; that Discovery kept changing its mind with respect to the vaccine; and that she was willing to comply with the rigorous testing protocols that had been set forth previously.

43.     Ms. Logan claimed she did not know the specifics regarding the Plaintiff's

situation and dismissed Matos' protests, simply asking when she was getting vaccinated since she had to let the company know by December 1, 2021.

44.    The Plaintiff advised that she stood firm in her sincere religious beliefs and convictions and just because Discovery rejected her exemption letter did not mean she was giving up on her faith.

45.    The Plaintiff never received a personalized reason tied to the denial of her exemption request, nor did Discovery participate in any interactive process to ascertain whether the parties could agree upon a reasonable accommodation.

46.    To date, the Plaintiff still does not know which individuals were part of the security council that made the decision or their qualifications nor was she made aware of the criteria utilized to assess whether her religious beliefs were sincerely held.

47.    The Plaintiff has never met any person on the security council that made the decision nor do these individuals know anything about Matos' personal life outside of the professional workplace, where one is discouraged from discussing their religious views/beliefs.

**<u>Plaintiff is Terminated Despite Work from Home Dates Being Extended:</u>**

48.    On or about December 16, 2021, Discovery sent a company-wide email instructing all non-essential employees to work remotely from December 20th through January 7, 2022 and that, thereafter, if local government guidelines and capacity permits, the company would plan to resume a 3-day per week hybrid office schedule.

49.    Discovery's policies concerning a 100% physical return to the office was constantly changing and despite all non-essential employees working remotely into January 2022 and plans for a full-time return to the office in flux, on or about December 27, 2021, the Plaintiff received an automated email referencing off-boarding activities following "receipt of your resignation letter and subsequent confirmation" (the "Off-boarding Email").

50.    The Plaintiff had not submitted a "resignation letter" nor was there any "subsequent confirmation" and she was confused by this false Off-boarding Email.

51.    The Off-boarding Email references that she will receive further information and "confirmation of [her] last day of service as [her] contractual notice period" and that "in the meantime, as part of the separation process there are certain Off-boarding activities that [Discovery] would like [her] to complete prior to [her] departure."

52.    The Plaintiff ultimately learned that her last day of work would be December 31, 2021 and her termination effective January 1, 2022; however, since her manager, supervisor, and production managers, were on vacation during the last week of December, she was unable to question the Off-boarding Email's references to a "resignation letter" prior to the separation date.

53.    December 31, 2021 was the Plaintiff's last day of work at Discovery as her termination was effective on January 1, 2022.

54.    At the time of her termination, Discovery's entire staff was working remotely, and vaccination status was irrelevant, so the decision to terminate Matos was nonsensical, premature, and discriminatory.

55.    The Plaintiff demonstrated that she could perform the functions of her position effectively and without endangering others insofar as she had worked remotely for several years without issue; and, upon information and belief, all non-essential Discovery employees were working from home until at least March 1, 2022.

56.    Discovery terminated the Plaintiff prematurely and, thereafter, she received an Exit Interview Survey which referenced Matos' decision to "leave Discovery to pursue other opportunities," which was false and misleading.

57.    On or about January 24, 2022, Matos filed an unemployment insurance claim.

58.    On or about February 14, 2022, Matos received a response from the New York

Department of Labor advising her that Discovery opposed her claim stating that she voluntarily resigned after refusing to comply with the employer's vaccine mandate.

59.    On or about February 16, 2022, the Plaintiff submitted an additional questionnaire form to the Department of Labor to attempt to qualify for unemployment insurance, but was still denied unemployment compensation.

60.    Discovery has retaliated against Matos for exercising her rights to be free from religious discrimination by falsifying the unemployment submissions and misrepresenting that the Plaintiff resigned from her position.

61.    Discovery faced no undue hardship in granting the Plaintiff a religious exemption to remain unvaccinated or to permit her to continue working remotely, particularly when its entire personnel were working remotely well into 2022.

62.    The Defendant failed to take even the most basic measures to afford the Plaintiff an opportunity to keep working and accommodate her religious beliefs.

63.    Upon information and belief, employees of Discovery continued to work remotely or on hybrid remote schedules until at least March 2022; yet the Plaintiff was terminated at least three months prior to Discovery effectuating a 100% in-person office return.

64.    Upon information and belief, Discovery's COVID-19 policies and protections were temporary, and the Plaintiff could have continued to work remotely and/or wear PPE/masks and undergo testing until the infection rates declined.

65.    Discovery's conjured burden and hardship simply did not exist at the time the Plaintiff was terminated nor thereafter; particularly, since it appears that the Defendant's current job postings do not include vaccination as a condition of employment.

66.    The Plaintiff's position could have been effectively performed remotely and/or her religious beliefs could have been sufficiently accommodated.

10

67.     Discovery's statements to Matos (and with other company-wide communications) all effectively represented no tolerance for being unvaccinated and was an irrational mandate.

68.     Discovery's company-wide communications and notice declining her religious exemption request was boilerplate, non-specific and discriminatory.

69.     The Defendant's Return to the Office policies were consistently being extended and the Vaccination Mandate was unreasonable at the time of her termination, since all of the employer's U.S. staff were working from home on January 1, 2022.

70.     The Plaintiff relied upon the extension of the Defendant's Return to the Office policies and inconsistency of the Company-wide emails in making decisions concerning her employment and, thus, was damaged by Discovery prematurely terminating her employment.

71.     On January 21, 2022, the Plaintiff participated in an interview by the Equal Employment Opportunity Commission ("EEOC") and on August 2, 2022, the Plaintiff filed a charge of employment discrimination and retaliation against the Defendant with the EEOC and the New York State Division of Human Rights.

72.     On or about December 20, 2022, the EEOC issued a "right to sue" letter to the Plaintiff and this action is timely filed pursuant thereto.

73.     The Vaccination Mandate, on its face and as applied, targets the Plaintiff's sincerely held religious beliefs by prohibiting her from seeking and receiving exemption and accommodation based upon such sincerely held religious beliefs and impermissibly burdens and attempts to compel her to abandon her faith or violate her beliefs under coercion.

74.     The Vaccination Mandate places the Plaintiff in an irresolvable conflict between compliance with the mandate and honoring her sincerely held religious beliefs.

75.     Discovery's Vaccination Mandate violates fundamental constitutional rights, both facially and as applied to all other similarly situated Discovery employees; arbitrarily and

capriciously discriminates between employees based on religion, even though these employees pose no direct threat to others because of their religious beliefs and decisions; and places unconstitutional conditions on employment.

76.    The Vaccination Mandate put substantial pressure on Matos to violate her sincerely held religious beliefs or face the loss of her job, benefits, professional standing in the industry, reputation, and ability to support her family.

77.    There was no legitimate, rational or compelling interest in enforcing the Vaccination Mandate before the entire staff at Discovery was commanded to return to the office.

78.    There was no legitimate, rational or compelling interest in the Vaccination Mandate's discriminatory application, nor in refusing to allow accommodation or exemption to honor sincerely held religious objections to vaccines, as working remotely was offered to all other New York and New York City employees at the time the Plaintiff was terminated.

79.    Discovery's Vaccine Mandate is irrational, in general, insofar as public health officials have acknowledged that COVID-19 vaccines do not necessarily stop the transmission of SARS-CoV-2 to others and the Plaintiff's vaccination status would not cause any direct threat to other people.

80.    The Plaintiff's claims are distinguishable from other vaccine mandate cases insofar as Matos was terminated prematurely, and at a time when every U.S. Discovery employee was receiving the same accommodation she requested – permission to work remotely.

81.    Discovery's Vaccination Mandate was overbroad and did not permit exception for reasonable medical and religious exemptions afforded to all other New York and/or New York City employees.

82.    Despite an internship at a farm and performing some temporary odd jobs, as of the date of this Complaint, the Plaintiff has been denied unemployment insurance and the

benefits of employment at a comparable position in her chosen field, despite actively searching for a new job.

83.     To date, the discriminatory and retaliatory termination has poisoned the Plaintiff's standing in the industry and has continued to prevent Matos from obtaining and/or maintaining suitable and comparable employment.

84.     Due to the stress and anxiety she endured as a result of Discovery's discriminatory and retaliatory conduct, as well as being unemployed for such a long period of time, the Plaintiff has sustained treatment for physical injuries and emotional distress.

85.     As a result of the foregoing, the Plaintiff has suffered and continues to suffer economic loss, emotional distress, physical injuries, humiliation, anxiety, mental and physical pain and suffering, loss of employment-related opportunities, pension, retirement and other benefits, seniority, and experiences and damage to her reputation and career.

<u>**THE FIRST CLAIM FOR RELIEF**</u>
<u>**Discrimination and Harassment in Violation of Title VII**</u>

86.     The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in Paragraphs 1 through 85 of this Complaint as if fully set forth herein.

87.     The Plaintiff is protected under Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e-2, *et. seq.*) ("Title VII") from discrimination in the workplace based upon her religion and/or religious beliefs.

88.     Title VII provides that it is an unlawful employment practice "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

89.     Title VII provides that "employer" means a person engaged in an industry

affecting commerce which has fifteen or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such a person.

90.    The Defendant is Plaintiff's "employer" under Title VII and falls within the jurisdiction of these federal statutes.

91.    The Plaintiff was qualified to perform the duties of her position at Discovery and successfully completed her duties while working remotely prior to the Vaccination Mandate.

92.    The Plaintiff's religious beliefs concerning the vaccination were sincere and important to her mental health and well-being.

93.    The Plaintiff suffered harassment and an adverse action when she was subjected to terms and conditions of employment that were different from those of persons of other religions and prematurely terminated from employment at Discovery due to her religious beliefs, prior to all Discovery employees in New York returning to the office at a 100% rate.

94.    By the acts and practices set forth above, including but not limited to terminating and refusing to accommodate the Plaintiff's sincere religious beliefs (even temporarily), Matos was subjected to religious discrimination in violation of Title VII.

95.    Matos' premature termination was discriminatory because other non-religious employees and vaccinated individuals were instructed to work remotely from January 2022 through at least March 2022, so the Plaintiff's vaccination status was immaterial.

96.    The Defendant failed to accommodate Matos' sincere religious beliefs, as required by law, and terminated her under circumstances that were discriminatory in nature, particularly, since the Company's full U.S. staff was still working remotely at the time of her termination and there was no rational reason to prematurely terminate Matos based upon her vaccination status before the 100% Return to the Office policy was even effectuated.

97.    The Plaintiff was deprived of at least three months of salary, health insurance

benefits, bonuses, retirement and other benefits when her reasonable accommodation was being provided to all of her U.S. colleagues who were working remotely at the time of her premature termination, and Matos' status as an unvaccinated individual was immaterial at that time.

98.    Discovery discriminated against unvaccinated God-fearing employees despite a company-wide US mandate that all employees work remotely during the first quarter of 2022.

99.    Matos' status as an unvaccinated individual was immaterial during the first quarter of 2022 insofar as all employees were working remotely at such time; thus, her termination was discriminatory in nature.

100.    As a direct and proximate result of the discriminatory work environment and the Defendant's willful discriminatory conduct and acts in violation of Title VII, the Plaintiff has suffered and will continue to suffer irreparable injury; damage to her career and reputation; and monetary and/or economic harm, including but not limited to:  loss of past and future income, wages, compensation, seniority/service credit, pension, retirement, and other benefits of employment for which she is entitled to an award of monetary damages and other relief.

101.    As a direct and proximate result of the discriminatory work environment and these Defendant' willful discriminatory conduct and acts in violation of Title VII, the Plaintiff has suffered and will continue to suffer severe mental and physical anguish, including but not limited to:  emotional distress, trauma, stress, anxiety, humiliation, embarrassment, physical injury, emotional and physical pain and suffering, loss of self-esteem and self-confidence, and depression, for which she is entitled to an award of monetary damages and other relief.

102.    The unlawful discriminatory actions by Discovery and any and all agents of the Employer were intentional and with reckless disregard to the Plaintiff's federally protected rights and, as such, constitute malicious, willful and wanton violations of Title VII for which she is entitled to an award of punitive damages.

## THE SECOND CLAIM FOR RELIEF
### Retaliation in Violation of Title VII

103.    The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in Paragraphs 1 through 85 of this Complaint as if fully set forth herein.

104.    Title VII (42 U.S.C. 2000e-3(a)) makes it unlawful for any person to retaliate against an employee who has opposed a discriminatory practice.

105.    The Defendant retaliated against the Plaintiff for opposing the rejection of her request for exemption from the Vaccination Mandate due to her religious convictions by, among other things, prematurely terminating Matos before the Company even achieved a 100% full-time return to the office and while the COVID-19 pandemic work from home policies were still in effect.

106.    The Defendant retaliated against the Plaintiff for opposing the rejection of her request for exemption from the Vaccination Mandate due to her religious convictions by, among other things, failing to accommodate the Plaintiff's exemption requests and unjustifiably declaring that her religious beliefs were insincere.

107.    The Defendant impermissibly took adverse action against Matos by not only wrongfully terminating her prematurely and denying her financial compensation for the first quarter of 2022 when the entire staff was permitted to work remotely, but in willfully falsifying to the Department of Labor that the Plaintiff had "resigned", so that she was also denied unemployment compensation.

108.    The Defendant lacked any justification for the adverse employment actions taken against Matos insofar as said action were neither based upon job-related rational and business necessity nor had Discovery's "return to office" plans been fully effectuated at the time of her premature termination.

109.    The Defendant's retaliation and falsified statements concerning Matos' separation was intentional and performed with malice, willfulness, and reckless indifference to the Plaintiff's protected civil rights.

110.    Discovery retaliated against Matos based upon her sincere religious beliefs insofar as she had been successfully working remotely for years prior to her termination and her desire to remain unvaccinated and work remotely during the first quarter of 2022, when the entire staff was working from home, would not have even been considered an "accommodation".

111.    Any rationalization offered by Discovery for their treatment of Matos and adverse employment actions are either false or insufficient to support the nature of such actions.

112.    By the acts and practices set forth above, and, more particularly, terminating her employment prematurely and without justifiable reason; failing to honor her religious exemption requests; neglecting to provide even the most basic measures to afford the Plaintiff an opportunity to keep working and accommodate her religious beliefs; and in opposing her unemployment compensation claim with false information, Discovery has retaliated against Matos for her opposition to unlawful employment practices in violation of Title VII.

113.    As a direct and proximate result of these Defendant's unlawful retaliatory conduct in violation of Title VII, the Plaintiff has suffered and will continue to suffer irreparable injury, damage to her career and reputation, monetary and/or economic harm, including but not limited to: loss of past and future income, wages, compensation, seniority/service credit, pension, retirement, and other benefits of employment for which she is entitled to an award of monetary damages and other relief.

114.    As a direct and proximate result of these Defendant's unlawful retaliatory conduct and acts in violation of Title VII, the Plaintiff has suffered and will continue to suffer severe mental and physical anguish, including but not limited to:  emotional distress, stress, anxiety,

humiliation, embarrassment, physical injuries, emotional and physical pain and suffering, chiropractic injuries, loss of self-esteem and self-confidence, and depression, for which she is entitled to an award of monetary damages and other relief.

115.    The unlawful retaliatory actions by the Defendant and any and all agents of the employer were intentional and with reckless disregard to the Plaintiff's federally protected rights and, as such, constitute malicious, willful and wanton violations for which she is entitled to an award of punitive damages.

**THE THIRD CLAIM FOR RELIEF**
**Discrimination and Harassment in Violation of the New York Executive Law**

116.    The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in Paragraphs 1 through 85 of this Complaint as if fully set forth herein.

117.    The Plaintiff was qualified to perform the duties of her position at Discovery and had successfully completed these duties working remotely for almost two years prior to her premature termination.

118.    The Plaintiff suffered harassment and an adverse action when she was subjected to terms and conditions of employment that were different from those of persons of other religions, and was prematurely terminated from employment at Discovery due to her religious beliefs despite her requested "accommodation" being offered to every other U.S. employee.

119.    By the acts and practices set forth above, including but not limited to terminating and refusing to accommodate the Plaintiff's sincere religious beliefs, Matos was subjected to religious discrimination in violation of New York State's Executive Law §296-d, *et. seq.* (the "Executive Law").

120.    The Defendant failed to accommodate Matos' religious beliefs, as required by law, and terminated her under circumstances that were discriminatory in nature, particularly,

18

since the Company's full U.S. staff was working remotely at the time of her termination.

121.    The Defendant qualifies as an employer under the Executive Law and by the acts and practices set forth above, including but not limited to:  creating, participating in, encouraging, inducing, condoning, authorizing and/or ratifying the harassment, religious discrimination and hostile work environment suffered by the Plaintiff and other Christian employees seeking religious exemption, and ignoring the Plaintiff's continued complaints of discrimination and harassment, the Defendant discriminated against Matos in the terms and conditions of her employment in violation of the New York Executive Law.

122.    New York Executive Law §296-d provides that it is unlawful for an employer to permit unlawful discrimination in its workplace.

123.    The Defendant had a duty to act on its actual knowledge of the Plaintiff's complaints and accommodation requests and to prevent, eradicate and/or remedy the harassment and discriminatory conduct of its personnel.

124.    The Defendant had actual and/or constructive notice of Matos's complaints, sincere religious beliefs, and requests for accommodation, but failed to oblige her request to work remotely despite granting such accommodation to all U.S. employees during the first quarter of 2022.

125.    As a direct and proximate result of the hostile work environment and the Defendant's unlawful discriminatory conduct and acts in violation of the Executive Law, the Plaintiff has suffered and will continue to suffer irreparable injury, damage to her career and reputation, monetary and/or economic harm, including but not limited to:  loss of past and future income, wages, compensation, seniority/service credit, pension, retirement, and other benefits of employment for which she is entitled to an award of monetary damages and other relief.

126.    As a direct and proximate result of the hostile work environment and the

Defendant's unlawful discriminatory conduct and acts in violation of the Executive Law, Matos has suffered and will continue to suffer severe mental and physical anguish, including but not limited to:  emotional distress, physical injury, trauma, stress, anxiety, humiliation, embarrassment, emotional and physical pain and suffering, loss of self-esteem and self-confidence, and depression, for which she is entitled to an award of monetary damages and other legal and equitable relief.

## THE FOURTH CLAIM FOR RELIEF
### Retaliation in Violation of the New York Executive Law

127.    The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in Paragraphs 1 through 85 of this Complaint as if fully set forth herein.

128.    New York State's Executive Law §296-d, *et. seq.* makes it unlawful for any person to retaliate against an employee who has opposed a discriminatory practice.

129.    The Defendant retaliated against the Plaintiff for opposing the rejection of her request for exemption from the Vaccine Mandate due to her religious convictions by, among other things, prematurely terminating Matos before the Company even achieved a 100% full-time return to the office, and while the COVID-19 pandemic work from home policies were still in effect.

130.    The Defendant retaliated against the Plaintiff for opposing the rejection of her request for exemption from the Vaccine Mandate due to her religious convictions by, among other things, failing to accommodate the Plaintiff exemption requests and unjustifiably declaring that her religious beliefs were insincere.

131.    The Defendant impermissibly took adverse action against Matos by not only wrongfully and prematurely terminating her and denying her financial compensation, but in willfully falsifying to the Department of Labor that the Plaintiff had "resigned," so that she was

also denied unemployment compensation.

132.    The Defendant lacked any justification for the adverse employment actions taken against Matos insofar as said action were neither based upon job-related rational and business necessity nor had Discovery's "return to office" plans been fully effectuated at the time of her premature termination.

133.    The Defendant's retaliation and falsified statements concerning Matos' separation was intentional and performed with malice, willfulness, and reckless indifference to the Plaintiff's protected civil rights.

134.    Any rationalization offered by Discovery for their treatment of Matos and adverse employment actions are either false or insufficient to support the nature of such actions.

135.    By the acts and practices set forth above, and, more particularly, terminating her employment prematurely and without justifiable reason; failing to honor her religious exemption requests; neglecting to provide even the most basic measures to afford the Plaintiff an opportunity to keep working and accommodate her religious beliefs; and in opposing her unemployment compensation claim with false information, Discovery has retaliated against Matos for her opposition to unlawful employment practices in violation of the Executive Laws.

136.    As a direct and proximate result of these Defendant's unlawful retaliatory conduct in violation of the Executive Laws, the Plaintiff has suffered and will continue to suffer irreparable injury, damage to her career and reputation, monetary and/or economic harm, including but not limited to: loss of past and future income, wages, compensation, seniority/service credit, pension, retirement, and other benefits of employment for which she is entitled to an award of monetary damages and other relief.

137.    As a direct and proximate result of these Defendant's unlawful retaliatory conduct and acts in violation of the Executive Laws, the Plaintiff has suffered and will continue to suffer

severe mental and physical anguish, including but not limited to:  emotional distress, stress, anxiety, humiliation, embarrassment, physical injuries, emotional and physical pain and suffering, chiropractic injuries, loss of self-esteem and self-confidence, and depression, for which she is entitled to an award of monetary damages and other relief.

138.    The unlawful retaliatory actions by the Defendant and any and all agents of the employer were intentional and with reckless disregard to the Plaintiff's protected rights and, as such, constitute malicious, willful and wanton violations for which she is entitled to an award of punitive damages.

**THE FIFTH CLAIM FOR RELIEF**
**Discrimination and Harassment in Violation of New York City's Human Rights Laws**

139.    The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in Paragraphs 1 through 85 of this Complaint as if fully set forth herein.

140.    The New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York ("NYCHRL"), prohibits discrimination in employment in New York City.

141.    As an employee designated to work in an office in New York City, the Plaintiff is protected under the NYCHRL from discrimination in the workplace based upon her religion and/or religious beliefs.

142.    The NYCHRL provides that it is an unlawful employment practice to fail or refuse to hire or to discharge an employee, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's religion or religious beliefs.

143.    The NYCHRL Title VII provides that "employer" means a person engaged in an industry affecting commerce which has four or more employees at all times during the period beginning twelve months before the start of an unlawful discriminatory practice and continuing

through the end of such unlawful discriminatory practice.

144.    The Defendant is Plaintiff's "employer" under the NYCHRL and falls within the jurisdiction of these New York City statutes.

145.    The Plaintiff was qualified to perform the duties of her position at Discovery and successfully completed her duties while working remotely prior to the Vaccination Mandate.

146.    The Plaintiff's religious beliefs concerning the vaccination were sincere and important to her mental health and well-being.

147.    The Plaintiff suffered harassment and an adverse action when she was subjected to terms and conditions of employment that were different from those of persons of other religions and ultimate terminated from employment at Discovery due to her religious beliefs prior to all Discovery employees in New York returning to the office.

148.    By the acts and practices set forth above, including but not limited to terminating and refusing to accommodate the Plaintiff's sincere religious beliefs, Matos was subjected to religious discrimination in violation of the NYCHRL.

149.    Matos' premature termination was discriminatory because other non-religious employees and vaccinated individuals were instructed to work remotely from January 2022 through at least March 2022, so the Plaintiff's vaccination status was immaterial.

150.    The Defendant failed to accommodate Matos' religious beliefs, as required by law, and terminated her under circumstances that were discriminatory in nature, particularly, since the Company's full U.S. staff was still working remotely at the time of her termination and there was no rational reason to terminate Matos based upon her vaccination status before the 100% Return to the Office policy was even effectuated.

151.    The Plaintiff was deprived of at least three months of salary, health insurance benefits, bonuses, retirement and other benefits when all of her colleagues were working

remotely at the time of her termination and Matos' status as an unvaccinated individual was immaterial at that time.

152.    Discovery discriminated against unvaccinated God-fearing employees despite a company-wide US mandate that all employees work remotely during the first quarter of 2022.

153.    Matos' status as an unvaccinated individual was immaterial during the first quarter of 2022 insofar as all employees were working remotely at such time; thus, her termination was discriminatory in nature.

154.    As a direct and proximate result of the discriminatory work environment and the Defendant's willful discriminatory conduct and acts in violation of the NYCHRL, the Plaintiff has suffered and will continue to suffer irreparable injury; damage to her career and reputation; and monetary and/or economic harm, including but not limited to:  loss of past and future income, wages, compensation, seniority/service credit, pension, retirement, and other benefits of employment for which she is entitled to an award of monetary damages and other relief.

155.    As a direct and proximate result of the discriminatory work environment and these Defendant' willful discriminatory conduct and acts in violation of the NYCHRL, the Plaintiff has suffered and will continue to suffer severe mental and physical anguish, including but not limited to:  emotional distress, trauma, stress, anxiety, humiliation, embarrassment, physical injury, emotional and physical pain and suffering, loss of self-esteem and self-confidence, and depression, for which she is entitled to an award of monetary damages and other relief as provided under the NYCHRL.

156.    The unlawful discriminatory actions by Discovery and any and all agents of the Employer were intentional and with reckless disregard to the Plaintiff's federally protected rights and, as such, constitute malicious, willful and wanton violations of the NYCHRL for which she is entitled to an award of punitive damages.

## THE SIXTH CLAIM FOR RELIEF
## Retaliation in Violation of the New York City Human Rights Laws

157.    The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in Paragraphs 1 through 85 of this Complaint as if fully set forth herein.

158.    The NYCHRL makes it unlawful for any person to retaliate against an employee who has opposed a discriminatory practice.

159.    The Defendant retaliated against the Plaintiff for opposing the rejection of her request for exemption from the Vaccination Mandate due to her religious convictions by, among other things, terminating Matos before the Company even achieved a 100% full-time return to the office and while the COVID-19 pandemic work from home policies were still in effect.

160.    The Defendant retaliated against the Plaintiff for opposing the rejection of her request for exemption from the Vaccination Mandate due to her religious convictions by, among other things, failing to accommodate the Plaintiff exemption requests and unjustifiably declaring that her religious beliefs were insincere.

161.    The Defendant impermissibly took adverse action against Matos by not only wrongfully terminating her prematurely and denying her financial compensation for the first quarter of 2022 when the entire staff was working remotely, but in willfully falsifying to the Department of Labor that the Plaintiff had resigned, so that she was also denied unemployment compensation.

162.    The Defendant lacked any justification for the adverse employment actions taken against Matos insofar as said action were neither based upon job-related rational and business necessity nor had Discovery's "return to office" plans been fully effectuated at the time of her premature termination.

163.    The Defendant's retaliation and falsified statements concerning Matos' separation

was intentional and performed with malice, willfulness, and reckless indifference to the Plaintiff's protected civil rights.

164.    Discovery retaliated against Matos based upon her sincere religious beliefs insofar as she had been successfully working remotely for years prior to her termination and her desire to remain unvaccinated and work remotely during the first quarter of 2022, when the entire staff was working from home, would not have even been considered an "accommodation".

165.    Any rationalization offered by Discovery for their treatment of Matos and adverse employment actions are either false or insufficient to support the nature of such actions.

166.    By the acts and practices set forth above, and, more particularly, terminating her employment prematurely and without justifiable reason; failing to honor her religious exemption requests; neglecting to provide even the most basic measures to afford the Plaintiff an opportunity to keep working and accommodate her religious beliefs; and in opposing her unemployment compensation claim with false information, Discovery has retaliated against Matos for her opposition to unlawful employment practices in violation of the NYCHRL.

167.    As a direct and proximate result of these Defendant's unlawful retaliatory conduct in violation of the NYCHRL, the Plaintiff has suffered and will continue to suffer irreparable injury, damage to her career and reputation, monetary and/or economic harm, including but not limited to: loss of past and future income, wages, compensation, seniority/service credit, pension, retirement, and other benefits of employment for which she is entitled to an award of monetary damages and other relief provided for under the NYCHRL.

168.    As a direct and proximate result of these Defendant's unlawful retaliatory conduct and acts in violation of the NYCHRL, the Plaintiff has suffered and will continue to suffer severe mental and physical anguish, including but not limited to:  emotional distress, stress, anxiety, humiliation, embarrassment, physical injuries, emotional and physical pain and suffering,

chiropractic injuries, loss of self-esteem and self-confidence, and depression, for which she is entitled to an award of monetary damages and other relief.

169.    The unlawful retaliatory actions by the Defendant and any and all agents of the employer were intentional and with reckless disregard to the Plaintiff's federally protected rights and, as such, constitute malicious, willful and wanton violations for which she is entitled to an award of punitive damages.

**THE SEVENTH CLAIM FOR RELIEF**
**Intentional Infliction of Emotional Distress**

170.    The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in Paragraphs 1 through 85 of this Complaint as if fully set forth herein.

171.    Based on the foregoing, the Defendant has engaged in conduct toward the Plaintiff that is extreme and outrageous so as to exceed the bounds of decency in a civilized society as it was done in a deliberate, callous, malicious and oppressive manner with the intent to harm the Plaintiff; was with an evil motive amounting to malice, spite, animosity and bias; and was done in conscious disregard of the Plaintiff's rights.

172.    Among other behavior, the Defendant's pervasive pattern of harassment, discrimination, and retaliation, both in the underlying claims and in the manner by which Matos was abruptly terminated despite the entire Discovery staff continuing to work remotely for at least three months after she was forced to give up her job constitutes extreme and outrageous conduct that exceeds the bounds of decency in a civilized society.

173.    By their actions and conduct, the Defendant and its agents and administrators intended and did intentionally or recklessly cause the Plaintiff to suffer and continue to suffer humiliation, anxiety, physical harm, and severe emotional distress.

174.    As a direct and proximate result of the Defendant's conduct and premature

termination of the Plaintiff, she has suffered and continues to suffer severe emotional distress, for which she is entitled to an award of monetary damages and other relief.

175.    The Defendant's extreme and outrageous conduct was knowing, malicious, intentional, willful and wanton, entitling the Plaintiff to an award of punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, ANDDY MATOS, prays for judgment against the Defendant, jointly and severally, as follows:

A.    Declaring that the acts and practices complained of herein are in violation of Title VII, the Executive Law, the NYCHRL and all other applicable local, state and federal laws;

B.    Enjoining and permanently restraining the Defendant from continuing to engage in such unlawful employment practices and from further violating the Plaintiff's rights in the future by, *inter alia,* providing negative, misleading and/or disparaging references pertaining to the Plaintiff's employment to the Department of Labor or future employers and/or inaccurately maintaining the Plaintiff's personnel file.

C.    Directing the Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect the Plaintiff's employment opportunities, including the removal of all letters of reprimand and associated negative documentation from the Plaintiff's personnel file;

D.    Directing the Defendant to place the Plaintiff in the position she would have been in but for the Defendant's discriminatory and retaliatory treatment of her, and to make her whole for occupational and reputational damage, including but not limited to restoring her personnel file and position to the state it was prior to reporting the unlawful employment practices and/or actively assisting the Plaintiff in her efforts to obtain future employment;

E.    Awarding damages, in an amount to be determined at trial, plus prejudgment

interest, to compensate the Plaintiff for all monetary and/or economic damages, including but not limited to, back pay, front pay, additional wages and compensation, bonuses, equity and/or seniority interests, out-of-pocket expenses, pension/retirement benefits, service credits, raises, health insurance reimbursements, life insurance and/or any and all other benefits of employment;

F.      Awarding damages, in an amount to be determined at trial, plus prejudgment interest, to compensate the Plaintiff for all non-monetary and/or compensatory damages, including but not limited to, compensation for mental anguish, humiliation, embarrassment, stress, anxiety, physical injuries, pain and suffering, and emotional distress;

G.      Awarding damages, in an amount to be determined at trial, plus prejudgment interest, to compensate the Plaintiff for the harm to her professional and personal reputations and loss of career fulfillment;

H.      Awarding punitive damages to deter the Defendant and others from engaging in similar conduct, to the fullest extent permitted by law;

I.      Awarding the Plaintiff the costs and disbursements she has incurred in this action, including witness and expert fees;

J.      Awarding reasonable attorney's fees to the fullest extent permitted by law;

K.      Awarding the Plaintiff such pre and post judgment interest as is permitted by law;

L.      Granting such other and further relief, both special and general, as this Court

deems just and proper and to which the Plaintiff may be justly entitled.

Dated:  Tarrytown, New York
        March 15, 2023

                                    MITCHELL POLLACK & ASSOCIATES, PLLC
                                    Attorneys for Plaintiff, ANDDY MATOS

                                    /s/ *Eileen M. Burger*

By.: _____
                                    Eileen M. Burger, Esq. (EB3002)
                                    150 White Plains Road, Suite 310
                                    Tarrytown, New York 10591
                                    (914) 332-0700
                                    eburger@mpollack.com

## **DEMAND FOR TRIAL BY JURY**

        Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiff demands a

trial by jury of this action.

Dated:  Tarrytown, New York
        March 15, 2023

                                      MITCHELL POLLACK & ASSOCIATES, PLLC
                                    Attorneys for Plaintiff, ANDDY MATOS

                                    /s/ *Eileen M. Burger*

By.: _____
                                    Eileen M. Burger, Esq. (EB3002)
                                    150 White Plains Road, Suite 310
                                    Tarrytown, New York 10591
                                    (914) 332-0700
                                    eburger@mpollack.com