UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANDDY MATOS,

                              Plaintiff,

        v.

DISCOVERY COMMUNICATIONS, LLC,
*now known as* WARNER BROS.
DISCOVERY, INC.

                              Defendant.

---

No. 23-CV-2218 (KMK)

OPINION & ORDER

<u>Appearances</u>:

Eileen M. Burger, Esq.
Mitchell Pollack & Associates, PLLC
Tarrytown, NY
*Counsel for Plaintiff*

Emily Clara Haigh, Esq.
Littler Mendelson, P.C.
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

    Plaintiff Anddy Matos ("Plaintiff") brings this Action against Discovery

Communications, LLC ("Discovery" or "Defendant") alleging that Discovery discriminated and

retaliated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42

U.S.C. §§ 2000e et seq., New York Executive Law § 296, and the New York City Human Rights

Law ("NYCHRL"). (*See generally* First Amended Complaint ("FAC") (Dkt. No. 12).)  Before

the Court is Discovery's Rule 12(b)(6) Motion To Dismiss.  (Not. of Mot. (Dkt. No. 18).)  For

the following reasons, Discovery's Motion is granted.

I.  Background

A.  Materials Considered

As a threshold matter, the Court must determine whether it may consider the following exhibits attached to the Parties' motion papers: (1) an August 9, 2021, announcement regarding Discovery's return-to-work and vaccination procedures, (Decl. of Emily C. Haigh in Supp. of Mot. ("Haigh Decl."), Ex. A ("Aug. 9 Posting") (Dkt. No. 20-1)); (2) an August 12, 2021, announcement discussing the same topics, (*id.*, Ex. B ("Aug. 12 Posting") (Dkt. No. 20-2)); (3) a September 9, 2021, announcement regarding Discovery's vaccination requirement, (*id.*, Ex. C ("Sept. 9 Posting") (Dkt. No. 20-3)); (4) Plaintiff's September 10, 2021, religious exemption request, (*id.*, Ex. D ("Pl's Exemption Request") (Dkt. No. 20-4))[1]; (5) the New York City Department of Law's December 20, 2021, guidance on vaccination and religious exemption procedures, (*id.*, Ex. E ("NYC Guidance") (Dkt. No. 20-5)); (6) a December 16, 2021, update regarding Discovery's work from home policy, (Decl. of Eileen M. Burger, Esq., in Opp. to Mot. ("Burger Decl."), Ex. 2 ("Dec. 16 Update") (Dkt. No. 21-2); and (7) Discovery's letters denying Plaintiff's exemption request and request for a remote work accommodation, (*id.*, Ex. 3 ("Vaccination Denial") (Dkt. No. 21-3); *id.*, Ex. 4 ("Remote Work Denial") (Dkt. No. 21-4), (collectively, "Denial Ltrs.")).

Generally, "when considering a motion to dismiss, the Court's review is confined to the pleadings themselves," because "to go beyond the allegations in the complaint would convert the Rule 12(b)(6) motion to dismiss into one for summary judgment pursuant to Rule 56." *Garcia v.*

---

[1] Plaintiff's request includes a letter further explaining her basis for requesting a religious exemption.  (*See* Pl's Exemption Request at 4.)  The letter was initially submitted before Discovery decided how to address such requests, and Plaintiff attached it to her exemption form. (*See* FAC ¶ 30 (stating that, as of August 12, 2021, Discovery "was still determining how to handle unvaccinated employees").)

*Dezba Asset Recovery, Inc.*, 665 F. Supp. 3d 390, 396 (S.D.N.Y. 2023) (alterations adopted) (quotation marks omitted).  However, "the Court's consideration of documents attached to, or incorporated by reference in the complaint, and matters of which judicial notice may be taken, would not convert the motion to dismiss into one for summary judgment." *Id*. (alteration adopted); *see also Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (explaining that "when ruling on Rule 12(b)(6) motions to dismiss," courts may "consider the complaint in its entirety, as well as . . . , documents incorporated into the complaint by reference, and matters of which a court may take judicial notice") (quotation marks omitted); *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) ("In deciding a Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice may be taken.'") (alteration adopted) (quoting *Samuels v. Air Transp. Loc*. 504, 992 F.2d 12, 15 (2d Cir. 1993)).  "[A] a court may incorporate documents referenced where (1) [the] plaintiff relies on the materials in framing the complaint, (2) the complaint clearly and substantially references the documents, and (3) the document's authenticity or accuracy is undisputed."  *Stewart v. Riviana Foods Inc*., No. 16-CV-6157, 2017 WL 4045952, at *6 (S.D.N.Y. Sept. 11, 2017) (emphasis omitted) (collecting cases); *see also Dunkelberger v. Dunkelberger*, No. 14-CV-3877, 2015 WL 5730605, at *5 (S.D.N.Y. Sept. 30, 2015) ("To be incorporated by reference, the complaint must make a clear, definite, and substantial reference to the documents, and to be integral to a complaint, the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint." (alterations adopted) (quoting *Bill Diodato Photography LLC v. Avon Prods., Inc*., No. 12-CV-847, 2012 WL 4335164, at *3 (S.D.N.Y. Sept. 21, 2012))).

Here, Plaintiff relies on and substantially references each exhibit in the FAC. (FAC ¶¶ 27 (Aug. 9 Posting), 28–30 (Aug. 12 Posting), 31–34 (Pl's Exemption Request), 40 (Sept. 9 Posting), 45–46 (NYC Guidance), 57–58 (Denial Ltrs.), 73 (Dec. 16 Update).) Indeed, she does not object to incorporating any of Discovery's exhibits and references several of those exhibits in her Opposition. (*See* Pl's Mem. in Opp. ("Pl's Mem.") 4–6, 8 (Dkt. No. 22).) Accordingly, the Court will consider these exhibits in ruling on Discovery's Motion. *See Cromwell-Gibbs v. Staybridge Suite Times Square*, No. 16-CV-5169, 2017 WL 2684063, at *1 n.2 (S.D.N.Y. June 20, 2017) (holding communications incorporated by reference when the complaint made "direct reference" to the documents and their contents).

### B. Factual Background

The following facts are drawn from the Complaint and are assumed to be true for the purposes of resolving the instant Motion. *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

Plaintiff is a devout Christian woman "whose religious beliefs are at the forefront" of her life decisions. (FAC ¶ 3.) Discovery is an entertainment company known for broadcasting a range of television channels including Animal Planet, the Food Network, and HGTV. (*Id*. ¶ 6.) Plaintiff alleges that Discovery qualifies as an employer under relevant federal, state, and local laws. (*Id*. ¶ 7.)

Discovery hired Plaintiff in October 2018 and she most recently held the position of Contract Production Coordinator assisting Animal Planet, Investigation Discovery, and the Travel Channel. (*Id*. ¶¶ 15–16.) This position was classified as non-essential and rarely required in-person interactions with Discovery's clients, talent, third-party vendors, or employees. (*Id*. ¶ 17.) Before the events giving rise to this case, Plaintiff "always met or exceeded the requirements of her position" and was never subject to disciplinary action. (*Id*. ¶¶ 19–22.)

### 1.  Discovery's COVID-19 Return to Work Policies

The COVID-19 pandemic caused many employers, including Discovery, to ask employees to work remotely.  (*Id.* ¶ 23.)  After the shift to remote work, Plaintiff successfully performed her job duties for over 18 months without interruption.  (*Id.* ¶ 24.)

On August 9, 2021, Discovery announced that it would begin to open its US offices that coming September and that employees would have to provide proof of vaccination to enter an office in person.  (*Id.* ¶ 27; *see also* Aug. 9 Posting.)  A few days later, Discovery's Chief People and Culture Officer followed up with additional details.  (FAC ¶ 28.)  She explained that Discovery "ha[d] made the decision that all discovery employees in the US must be fully vaccinated before they return to the office."  (*See* Aug. 12 Posting at 5.)  She also stated that "[e]xemption[s] from Discovery's vaccination requirement may be granted based on valid medical reasons or sincerely held religious beliefs."  (*Id.*)  At the time, Discovery had not "determin[ed] how [to] handle employees who d[id] not want to be vaccinated and d[id] not qualify for an exemption."  (*Id.*)  Plaintiff submitted a letter requesting an exemption based on her religious beliefs on August 30, 2021.  (FAC ¶ 31; *see also* Pl's Exemption Request at 4.)

Discovery updated its policy on September 9, 2021, adopting the requirement at the heart of this case.  Namely, Discovery announced that "all US employees w[ould] be required to have the COVID-19 vaccination by January 1, 2022[,] or qualify for a religious or medical exemption as a condition of continued employment," (the "vaccine requirement").  (*See* Sept. 9 Posting at 2.)

### 2.  Plaintiff's Exemption Request

Plaintiff filed a religious vaccine exemption form on September 10, 2021, and attached a letter explaining her religious beliefs.  (FAC ¶ 41; Pl's Exemption Request.)  At the same time, Plaintiff requested an accommodation permitting her to work remotely.  (FAC ¶ 42.)

The exemption form asked Plaintiff to provide a statement "detailing the religious basis for [her] vaccination objection" and why it "prohibits the COVID-19 vaccination." (Pl's Exemption Request at 2.) Her statement reads as follows:

> I am a Christian, who believes in the powerful teachings of the Bible, and seeks the guidance of the Holy Spirit. I believe God's promise that "If any of you lacks wisdom, let him ask God, who gives generously to all without reproach, and it will be given him." (ESV James 1 :5).
>
> I feel spiritually and morally compromised by my employer's mandatory Covid-19 vaccination requirements. I have prayed, searched scripture, and relied on the power of the Holy Spirit to guide me to do God's will, especially during these tumultuous times. I cannot in good conscience accept the Covid vaccination requirement because it goes against my religious beliefs and God's law. The New Testament teaches us that: "Don't you know that you are God's temple and that God's Spirit dwells in you?" (ESV 1 Corinthians 3:16). "If anyone destroys God's Temple, God will destroy him. For God's temple is holy, and you are that temple." (ESV 1 Corinthians 3:17).
>
> My personal understanding of God's work is that God created us as a reflection of his holy image and my body is an extension of that sacred temple. I firmly believe the vaccine would tarnish and defile God's temple. I also have serious medical concerns due to severe allergies to pharmaceuticals, preservatives, metals, pollens, molds and being medically naive with respect to certain antigens. I believe that I am protected from getting COVID-19 due to natural immunity, and a reliance upon God's protection, consistent with Psalm 91. If I were to go against the guidance and directive of the Holy Spirit, I would be intentionally sinning and jeopardizing my relationship with God and my spiritual growth. A sin is anything that violates the will and instruction of God and It goes against my conscience and faith to commit sin.
>
> I am therefore requesting to be excused from the Covid vaccination requirement under the religious exemption, so that I may maintain a clean conscience before God.

(*Id*. at 4.) The form also requested a statement from "religious leaders or practitioners supporting the basis" for her objection to the vaccine. (*Id*. at 2.) Although Plaintiff does not allege that she provided any such statement, the form clarified that the failure to provide a statement would not be the basis for a denial. (*Id*.)

6

The exemption form also asked whether Plaintiff had received any vaccinations or taken any prescription pharmaceuticals since the age of 18.  (*Id.* at 3.)  Plaintiff answered "no" as to vaccinations, but "yes" as to pharmaceuticals.  (*Id.*)[2]  In the FAC, Plaintiff explains that she ingested an over-the-counter medication after the age of 18 but before she was baptized at age 21.  (FAC ¶¶ 47–48.)  In brief, Plaintiff experienced a "severe allergic reaction," which resulted in a high fever and significant facial swelling.  (*Id.* ¶ 51.)  The episode made Plaintiff's mother "extremely worried," leading her to administer Plaintiff over-the-counter allergy medication. (*Id.* ¶ 52.)  Since then, Plaintiff has been baptized and has strengthened her Christian beliefs.  (*Id.* ¶ 53.)  In other words, her use of pharmaceuticals "occurred prior to her accepting Jesus Christ as her savior and devoting herself to her faith."  (*Id.* ¶ 55.)

On November 8, 2021, Discovery denied Plaintiff's exemption and accommodation requests.  (*Id.* ¶ 57.)  The letter denying Plaintiff's exemption request stated that, "[d]ue to the number of requests Discovery received," it could not provide Plaintiff an individualized response.  (Vaccination Denial at 1.)  Instead, it stated Plaintiff's request was "likely denied for one or more of the following reasons":

> (1) The information you provided does not demonstrate that the reason for your request is based on a sincerely-held religious belief; (2) The information you provided does not demonstrate a conflict between a sincerely-held religious belief and Discovery's vaccine policy; (3) You have not provided sufficient information and/or sufficiently cooperated with us concerning the exemption process; (4) The requested accommodation poses an undue hardship to Discovery.

---

[2] Plaintiff criticizes the form for asking a yes/no question as opposed to allowing for explanation, arguing it is inequitable and contrary to New York City Guidance.  (FAC ¶ 45.) The Court notes Plaintiff's allegation but does not opine on the form's compliance with any relevant guidelines, as the issue is not relevant to the instant Motion.

(*Id.*)  Discovery asked Plaintiff to decide whether she intended to comply with the vaccine requirement by December 1, 2021, if she wished to remain employed.  (*Id.*)[3]  In a subsequent Zoom video-conference meeting with a member of Discovery's HR staff, Plaintiff advised that she stood firm in her objection to receiving the vaccine.  (FAC ¶¶ 59, 62.)  Despite the December 1 deadline, Discovery instructed all non-essential employees to work remotely through at least January 7, 2022.  (*Id.*¶ 73.)

On December 27, 2021, Plaintiff received an email referencing off-boarding activities following the "receipt of [her] resignation letter and subsequent confirmation."  (*Id.*¶ 74.)  The email confused Plaintiff because she had neither submitted a resignation letter nor confirmed her resignation.  (*Id.*¶ 75.)  Discovery ultimately terminated Plaintiff effective January 1, 2022.  (*Id.*¶ 76.)

Plaintiff subsequently filed an unemployment insurance claim on or about January 24, 2022.  (*Id.*¶ 89.)  A few weeks after filing her claim, the New York Department of Labor responded notifying Plaintiff that Discovery had opposed her claim, stating that Plaintiff voluntarily resigned after refusing to comply with Discovery's vaccine requirement.  (*Id.*¶ 90.)  Plaintiff alleges these statements were false, (*id.*¶ 91), as she had never submitted a resignation letter and did not leave Discovery voluntarily, (*id.*¶ 75).  Plaintiff reapplied for unemployment insurance a few days later but was denied.  (*Id.*¶ 91.)

C.  Procedural History

Discovery sought leave to file a motion to dismiss on May 16, 2023, and renewed its request after Plaintiff filed the FAC.  (*See* Dkt. Nos. 9, 13.)  The Court held a pre-motion

---

[3] Plaintiff alleges that applicable New York City Guidance at the time did not require terminating unvaccinated employees.  (FAC ¶¶ 68–70.)  The Court again notes Plaintiff's allegation but need not opine on the issue.

conference on July 20, 2023, and set a briefing schedule.  (*See* Dkt. (minute entry for July 20,

2023); Scheduling Order (Dkt. No. 17).)  Pursuant to that schedule, Discovery moved to dismiss

on September 20, 2023.  (Not. of Mot. (Dkt. No. 18); Mem. of Law in Supp. ("Def's Mem.")

(Dkt. No. 19); Haigh Decl.)  Plaintiff filed her Opposition on October 25, 2023.  (Pl's Mem.;

Burger Decl.)  Discovery replied on November 8, 2023.  (Reply Mem. of Law ("Def's Reply")

(Dkt. No. 23).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a Rule 12(b)(6) motion to dismiss, "a plaintiff's obligation to provide the

grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007) (alteration adopted) (quotation marks and citation omitted).  Indeed, Rule 8 of

the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-

unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a

complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.*

(alteration adopted) (quotation marks and citation omitted).  Rather, a complaint's "[f]actual

allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550

U.S. at 555.  "[O]nce a claim has been stated adequately, it may be supported by showing any set

of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege

"only enough facts to state a claim to relief that is plausible on its face," *id.* at 570.  However, if

a plaintiff has not "nudged [his] claim[ ] across the line from conceivable to plausible, the[ ]

complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a

complaint states a plausible claim for relief will ... be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79. ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw all reasonable inferences in the plaintiff's favor," *Daniel v. T&M Protection Resources, Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012))..  Additionally, "when ruling on a Rule 12(b)(6) motion to dismiss," district courts are directed to confine their consideration to "the complaint in its entirety, . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Bellin*, 6 F.4th at 473 (quotation marks omitted); *see also Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 240 (S.D.N.Y. 2021) (same).

B.  Analysis

Discovery moves to dismiss Plaintiff's Title VII discrimination and retaliation claims and argues that the Court should deny supplemental jurisdiction over any additional state law claims. (*See generally* Def's Mem.)  Plaintiff responds with a threshold objection to the enforceability and rationality of Discovery's vaccine requirement, (Pl's Mem. 10–12), then explains why her claims should remain in this case, (*see id*. at 12–25).  The Court addresses each issue in turn.

### 1. Enforceability

As an initial matter, Plaintiff challenges the enforceability of Discovery's vaccine requirement. Her argument appears to be that the policy was "inapplicable to remote employees" because it was adopted to ensure a safe return to office. (Pl's Mem. 11.) For that reason, Plaintiff contends that the decision to terminate her while she was working remotely was "premature" and raises an inference of discrimination. (*See id.*) Discovery responds that its vaccine requirement was enforceable and mandatory notwithstanding Plaintiff's views about how the policy was applied. (*See* Def's Reply 2.)

The Court agrees with Discovery that the policy was enforceable against Plaintiff. The vaccine requirement is incorporated by reference in the Amended Complaint, (*see* FAC ¶ 40), and reads:

> [A]ll US employees will be required to have the COVID-19 vaccination by January 1, 2022 or qualify for a religious or medical exemption as a condition of continued employment.

(Sept. 9 Posting at 2.) By its terms, the policy makes vaccination a mandatory condition of employment applicable to "all" employees. (*See id.*) Plaintiff's contrary understanding takes Discovery's communications out of context. She relies on a line in an earlier August 9, 2021, posting that states: "our entire return-to-office plan rests on one non-negotiable: everyone . . . must be vaccinated." (Pl's Mem. 11 (citing Aug. 9 Posting at 2).) But nothing about that posting, or any other communication, created a remote work exception to Discovery's subsequent—and more expansive—vaccine requirement. For that reason, the Court is at a loss to understand how applying the vaccine requirement to Plaintiff was discriminatory. The requirement, alone, is "facially neutral and generally applicable," and Plaintiff does not point to any "similarly situated persons who have been treated differently," *see Kane v. de Blasio*, 623 F. Supp. 3d 339, 359 (S.D.N.Y. 2022)—i.e., a remote employee who was *not* required to receive

the vaccine (*see generally* FAC.)[4]  Plaintiff's remaining allegations that the decision to terminate

her was "nonsensical" or "premature," (*see, e.g.*, *id.* ¶¶ 81, 88, 104, 114, 128), are "subjective

characterizations" of Discovery's actions, which the Court is under no obligation to consider at

the pleading stage, *see Babul v. Demty Assocs. Ltd. P'ship*, No. 17-CV-5993, 2018 WL 2121556,

at *2 (E.D.N.Y. May 8, 2018); *see also Saskatchewan Healthcare Emp.'s Pension Plan v. KE

Holdings Inc.*, --- F. Supp. 3d ---, 2024 WL 775195, at *29 (S.D.N.Y. Feb. 26, 2024) (finding

that a plaintiff's "subjective characterization of [a communication] as lacking 'candor'" did not

suffice to allege a defendant's mental state); *First Nationwide Bank v. Gelt Funding Corp.*, 27

F.3d 763, 771 (2d Cir. 1994) (stating "conclusions of law or unwarranted deductions of fact are

not admitted" under Rule 12(b)(6) (quotation marks omitted)).

　　　　To the extent Plaintiff challenges the imposition of a vaccine requirement more broadly,

the Court notes that "federal courts throughout the Second Circuit have approved vaccine

mandates as a lawful condition of employment."  *Gonzalez v. City of New York*, No. 22-CV-

3577, 2024 WL 1332546, at *7 (E.D.N.Y. Mar. 28, 2024); *see also Garland v. New York City

Fire Dep't*, No. 23-663, 2024 WL 445001, at *3 (2d Cir. Feb. 6, 2024) ("Both [the Second

Circuit] and many New York state courts have held that vaccination is a [valid] 'condition of

employment.'"  (quoting *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 294 (2d Cir.

2021))); *Garland v. City of New York*, 665 F. Supp. 3d 295, 307 n.8 (E.D.N.Y. 2023) ("[N]early

all other New York state courts to address the issue have found that the Vaccine Mandate was a

condition of employment")).

---

[4] Plaintiff alleges that the "majority of U.S. Discovery employees were receiving the same purported 'accommodation' she requested—permission to work remotely."  (FAC ¶ 114.) But, crucially, she does not allege that any of these employees declined to receive the vaccine. (*See generally id.*)

2.  Discrimination

The Court next turns to Plaintiff's Title VII discrimination claim.

Title VII prohibits discrimination in employment on the basis of religion and requires employers to reasonably accommodate an employee's religion unless doing so would constitute an undue hardship.  42 U.S.C. § 2000e et seq.; *see Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977) ("The intent and effect of [including religion in Title VII] was to make it an unlawful employment practice under § 703(a)(1) for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees.").  "To establish a prima facie case of religious discrimination for failure to accommodate, Plaintiff must show that (1) [s]he held a 'bona fide religious belief conflicting with an employment requirement'; (2) [s]he informed [her] employer of this belief; and (3) [s]he was 'disciplined for failure to comply with the conflicting employment requirement.'" *Algarin v. NYC Health + Hospitals Corp.*, 678 F. Supp. 3d 497, 508 (S.D.N.Y. 2023) (italics omitted) (quoting *Knight v. Conn. Dep't of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001)); *accord Pastor v. Mercy Med. Ctr.*, No. 22-CV-7847, 2024 WL 3029118, at *3 (E.D.N.Y. June 17, 2024); *Cagle v. Weill Cornell Med.*, 680 F. Supp. 3d 428, 435 (S.D.N.Y. 2023).  "Title VII defines religion to include 'all aspects of religious observance and practice, as well as belief.'" *Cagle*, 680 F. Supp. 3d at 435 (quoting 42 U.S.C. § 2000e-2(a)(1)). "If the prima facie case is shown, 'the burden then shifts to the employer to show it could not accommodate the employees' religious beliefs without undue hardship.'"  *Algarin*, 678 F. Supp. 3d at 508 (italics omitted) (quoting *Knight*, 275 F.3d at 167); *see also Cagle*, 680 F. Supp. 3d at 435 ("If the employee is able to make out a prima facie case, the burden shifts to the employer to show that it either

offered the employee a reasonable accommodation or that doing so would cause an undue

burden." (italics omitted) (citing *Baker v. Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006))).[5]

Discovery's arguments focus on Plaintiff's prima facie case, so the Court provides some

additional detail about that element. To satisfy her burden, Plaintiff must allege a belief that is

both "sincerely held" and "religious in nature." *Beickert v. New York City Dep't of Educ*.,

No. 22-CV-5265, 2023 WL 6214236, at *2–3 (E.D.N.Y. Sept. 25, 2023) (alteration adopted)

(quoting *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984)).

Sincerity boils down to an inquiry into whether a plaintiff holds a belief in good faith.

*See Gardner-Alfred v. Fed. Rsrv. Bank of New York*, No. 22-CV-1585, 2023 WL 6214863, at

*13 (S.D.N.Y. Sept. 25, 2023). But, relevant here, courts widely recognize that inquiry into a

plaintiff's sincerity is "inappropriate for resolution on a motion to dismiss" because it turns on a

plaintiff's credibility. *See Vasquez v. City of New York - Off. of Mayor*, No. 22-CV-5068, 2024

WL 1348702, at *6 (E.D.N.Y. Mar. 30, 2024); *Gardner-Alfred v. Fed. Rsrv. Bank of New York*,

651 F. Supp. 3d 695, 721 (S.D.N.Y. 2023) ("The need for a full exposition of facts is profound

under such circumstances since determining a [person's] state of mind is 'an awesome problem,'

capable of resolution only by reference to a panoply of subjective factors." (quoting *Patrick*, 745

F.2d at 159)); *Patrick*, 745 F.2d at 157 ("A more cursory evaluation raises the spectre that the

sincerity issue was decided by reference to the factfinder's perception of what a religion should

resemble."); *see also Palin v. New York Times Co.*, 940 F.3d 804, 812 (2d Cir. 2019) (reversing a

---

[5] "Although undue hardship is an affirmative defense, it may be raised on a pre-answer motion to dismiss when the facts establishing it are clear from the face of the complaint." *Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C.*, No. 22-CV-2929, 2023 WL 3467143, at *5 (S.D.N.Y. May 15, 2023); *see also Haczynska v. Mount Sinai Health Sys., Inc.*, --- F. Supp. 3d ---, 2024 WL 3178639, at *12 (E.D.N.Y. June 26, 2024) (same); *Jackson v. N.Y. State Off. of Mental Health - Pilgrim Psychiatric Ctr.*, No. 23-CV-4164, 2024 WL 1908533, at *6 (E.D.N.Y. May 1, 2024) (same).

decision to grant a motion to dismiss where district court relied on "credibility determinations not permissible at any stage before trial").[6]

A belief's religious nature turns on whether a plaintiff subjectively "conceives of the beliefs as religious." *See Beickert*, 2023 WL 6214236, at *3 (quoting *Patrick*, 745 F.2d at 158). Here, too, the Court's role is limited as "the Supreme Court and the Second Circuit have cautioned" that "defining 'what is a "religious" belief or practice is more often than not a difficult and delicate task.'" *Id*. (quoting *Thomas v. Rev. Bd. of Indiana Emp. Sec. Div*., 450 U.S. 707, 714 (1981)). And "beliefs need not be acceptable, logical, consistent, or comprehensible to others," *Thomas*, 450 U.S. at 714, to merit protection. The "delicate" nature of this inquiry notwithstanding, courts have long recognized that *some* type of judicial review is appropriate, as it would offend "the very concept of ordered liberty" for "every person to make his own standards on matters of conduct in which society as a whole has important interests." *Wisconsin v. Yoder*, 406 U.S. 205, 215–16 (1972). Thus, in many circumstances, "a threshold inquiry into the 'religious' aspect of particular beliefs and practices cannot be avoided."

---

[6] Discovery questions the sincerity of Plaintiff's beliefs based on her use of pharmaceuticals and statements in her letter which Discovery believes establish a non-religious basis for her objection to vaccination. (*See* Def's Mem. 11–12 (stating Plaintiff's use of pharmaceuticals is "fatal" to her claim); Def's Reply 6 ("Plaintiff's 'body-is-God's-temple' and 'natural immunity' objections are undermined by her inclusion of medically related objections[.]").) But Discovery has provided no legal basis to consider those arguments at the motion to dismiss stage. *Beickert*, which Discovery cites for support, differed in key respects. There, the Plaintiff failed to allege any belief—not to mention a religious one—that prevented her from being vaccinated. *See Beickert*, 2023 WL 6214236, at *4; *see also Ellison*, 692 F. Supp. 3d at 557 ("[T]he Court finds that each Plaintiffs' beliefs are sincerely held as there is no evidence introduced at this stage of the proceedings that suggests that the beliefs have been concocted for litigation or are otherwise disingenuous."). In fact, her stated beliefs were consistent with vaccination, provided she determined the vaccine was "safe and effective." *Beickert*, 2023 WL 6214235, at *3 (quotation marks omitted). Here, given Plaintiff's express allegation of a conflict, it would be inappropriate to infer as a matter of law that Plaintiff's "true conflict" is based on non-religious concerns. (*See* Def's Reply 6.)

*Mason v. Gen. Brown Cent. Sch. Dist.*, 851 F.2d 47, 51 (2d Cir. 1988) (quoting *Int'l Soc'y for Krishna Consciousness, Inc. v. Barber*, 650 F.2d 430, 433 (2d Cir.1981)).  And "despite the broad, subjective test employed in this inquiry, courts are nonetheless clear that 'a person's intellectual concerns are not safeguarded.'"  *Gardner-Alfred*, 2023 WL 6214863, at *13 (S.D.N.Y. Sept. 25, 2023) (alteration adopted) (internal quotation marks omitted) (quoting *Eatman v. United Parcel Service*, 194 F. Supp. 2d 256, 268 (S.D.N.Y. 2002)); *Int'l Soc'y for Krishna Consciousness*, 650 F.2d at 440 (same); *see also Mason*, 851 F.2d at 51 (recognizing beliefs based on "secular or scientific principles" are not protected).

What this all means at the motion to dismiss stage is that the Court's review is heavily circumscribed.  It examines simply whether Plaintiff has alleged that her "espoused beliefs do in fact stem from religious convictions." *Beickert*, 2023 WL 6214236, at *3 (alteration adopted) (quoting *Sherr v. Northport-East Northport Union Free Sch. Dist.*, 672 F. Supp. 81, 94 (E.D.N.Y. 1987)); *see also Meadows v. Lesh*, No. 10-CV-223, 2010 WL 3730105, at *3 (W.D.N.Y. Sept. 17, 2010) ("[A]t the pleading stage, the complaint must still assert sufficient allegations necessary to establish that plaintiff's claim is based upon a sincerely held religious belief.").  Even under that limited standard, however, courts have dismissed claims that are either conclusory or that fail to allege how a conflicting belief is rooted in religious convictions.  Thus, "[b]ald allegations that a plaintiff has a religious belief and that those religious beliefs conflict with an employment requirement are insufficient to state a claim for religious discrimination under Title VII." *See Cagle*, 680 F. Supp. 3d at 435.  Put differently, a plaintiff cannot merely allege that she has "religious beliefs" which include "religious practices of non-vaccination," without providing some detail about what the beliefs are and why vaccination conflicts with them. *See id.*; *see also Marte v. Montefiore Med. Ctr.*, No. 22-CV-3491, 2022 WL 7059182, at

*3 (S.D.N.Y. Oct. 12, 2022) (holding that even though plaintiff pleaded that she was "a Born-Again Christian, which could give rise to a bona fide religious belief," and that she was "unwilling to receive the COVID-19 vaccinations," "the complaint itself never alleges that Plaintiff had a bona fide religious belief that conflicted with the mandate"). Similarly, courts have dismissed claims where plaintiffs provide a purportedly conflicting belief but make no effort to plausibly connect that belief to religion. *See Beickert*, 2023 WL 6214236, at *4 (finding that, as alleged, "[the plaintiff's] non-compliance with the Vaccine Mandate rests on her desire for COVID-19 vaccines to be subjected to longer term testing" (quotation marks omitted)); *cf. Caviezel v. Great Neck Pub. Schs.*, 701 F. Supp. 414, 429 (E.D.N.Y. 2010) (finding, in the preliminary injunction context, that a plaintiff's objection that a vaccine "may not be safe," without more, "is not based on a religious belief"), *aff'd*, 500 F. App'x 16 (2d Cir. 2012) (summary order).

The Court is aware of numerous cases applying a similar rubric to "body-is-a-temple" claims at the motion to dismiss stage. They generally fall into two camps. On the one hand, some courts have dismissed claims where the plaintiff either does not explain the basis for a "body-is-a-temple" objection to vaccines, or cites explicitly personal, nonreligious judgments. *See Ellison v. Inova Health Care Servs.*, 692 F. Supp. 3d 548, 558 (E.D. Va. 2023) (dismissing body-is-a-temple claim based on fear that the COVID-19 vaccine "could induce harm" and noting "[d]istrict courts have routinely rejected similar claims"); *Guthrie-Wilson v. Cook Cnty.*, No. 23-CV-362, 2023 WL 8372043, at *2 (N.D. Ill. Dec. 4, 2023) ("[A]lthough plaintiff purports to ground her refusal to receive the Covid-19 vaccine in her faith as a Seventh Day Adventist, she identifies no specific religious tenet that conflicts with Covid-19 vaccination, citing only the broad principle that she must 'practice a healthy lifestyle and abstain from anything that could

bring her harm.'"); *Detwiler v. Mid-Columbia Med. Ctr.*, No. 22-CV-1306, 2023 WL 7221458, at *6 (D. Or. Sept. 13, 2023) ("[T]he Court readily accepts that plaintiff has a bona fide religious belief that that her body is a temple of the Holy Spirit—however, plaintiff's specific determination of what is harmful (i.e., ethylene oxide) was not, in this case, premised on the Bible or any other religious tenet[.]" (quotation marks omitted)), *report and recommendation adopted*, 2023 WL 7220734 (D. Or. Nov. 2, 2023); *Fallon v. Mercy Cath. Med. Ctr. of Se. Pennsylvania*, 877 F.3d 487, 492 (3d Cir. 2017) (finding plaintiff who alleged "one should not harm their own body and strongly believes that the flu vaccine may do more harm than good" failed to allege that "the basis of his refusal of the flu vaccine" was itself a religious belief (quotation marks and alteration omitted)).[7]

Other courts, however, have denied motions to dismiss body-is-a-temple claims premised on religious objections to the vaccine's contents or divine command. *See Lucky*, 103 F.4th at 1243 (reversing dismissal where plaintiff alleged body-is-a-temple belief, that she makes medical decisions through prayer, and that "God spoke to her in her prayers and directed her that it would be wrong to receive the COVID-19 vaccine" (alteration adopted)); *Rizzo v. N.Y.C. Dep't of Sanitation*, No. 23-CV-7190, 2024 WL 3274455, at *2 (S.D.N.Y. July 2, 2024) (finding plaintiff plausibly alleged prima face cases based on allegations that "if a Catholic comes to an informed judgment they should not receive a vaccine, then the Catholic Church requires that the person

---

[7] The caselaw is inconsistent about the degree of specificity with which a plaintiff must allege a religious objection to vaccination itself. Some cases hold that plaintiffs must point to a portion of "the Bible or [some] other religious tenet." *See, e.g.*, *Detwiler*, 2023 WL 7221458, at *6. Yet the Sixth Circuit recently rejected a similar rule, holding plaintiffs need not "explain how [their] religion has a specific tenet or principle that does not permit . . . vaccinat[ion]." *Lucky v. Landmark Med. of Michigan, P.C.*, 103 F.4th 1241, 1243 (6th Cir. 2024) (quotation marks omitted). The Court need not address whether citation to a particular tenet is required, as it would not affect the outcome of this Motion.

refuse the vaccine" (alteration adopted)); *Vasquez*, 2024 WL 1348702, at *6 (plaintiff alleged the vaccine would "violat[e] . . . his body/temple" because he believed it "require[d] him, in some way, to condone abortion"); *see also Cesare v. PACT MSO, LLC.*, --- F. Supp. 3d ---, 2024 WL 2823193, at *2 (D. Conn. June 4, 2024) (denying summary judgment based on belief that vaccines derived from fetal cell lines would violate the plaintiff's "God-given responsibility to protect her body, which is a temple for the Holy Spirit").

The Court now applies that rubric to Plaintiff to see if she plausibly alleges a "religious" belief that conflicts with Discovery's vaccination requirement. Starting with the latter point, it is plain that her beliefs raise a conflict. Plaintiff alleges a "firm belief that the COVID-19 vaccine would violate the sanctity of her body" based on her understanding that "her body is an extension of God's sacred temple" and that taking the vaccine "would tarnish and defile God's temple." (FAC at ¶ 33 (quotation marks omitted) (alteration adopted); *see also* Pl's Mem. 13 ("[I]ngesting the vaccine would be a sin because she must remain as God made her.").)[8] And while the body-is-a-temple belief "is not in itself inconsistent with receiving a vaccine" as alleged, *see Petermann v. Aspirus, Inc.*, No. 22-CV-332, 2023 WL 2662899, at *2 (W.D. Wis. Mar. 28, 2023), Plaintiff's belief that vaccines would defile the temple certainly is. Less plain, however, is whether that objection to vaccinations "is itself based on religion." *See id*. Despite referencing "God's temple," Plaintiff does not allege that her concern with vaccination is "part of a broader religious faith," *Fallon*, 877 F.3d at 493, or that it follows some divine or authoritative command, *see, e.g.*, *Rizzo*, 2024 WL 3274455, at *2. In fact, beyond a conclusory assertion that

---

[8] The parenthetical phrase appears in Plaintiff's brief but not in her Amended Complaint. (*See generally* FAC.) This appears to be another way of articulating Plaintiff's body-is-a-temple belief. But to the extent it is not, and it forms a distinct objection to vaccination, Plaintiff is free to allege such in a second amended complaint.

it violates her body-as-a-temple belief, she at no point alleges what her objection to vaccination

actually *is*.  As pled, then, her Complaint is akin to a "[b]ald allegation[] that [Plaintiff] has . . .

beliefs [that] conflict with an employment requirement," *see Cagle*, 680 F. Supp. 3d at 435,

without any allegation giving rise to an inference that the objection, itself, "stem[s] from

religious convictions" *Beickert*, 2023 WL 6214236, at *3.

        Plaintiff makes a few attempts to address this issue, none on point.  First, Plaintiff points

to other practices "consistent" with her objection to vaccination, including that she has

"maintained her devout Christian ideals and refrained from ingesting any pharmaceuticals" since

age 21.  (*See* Pl's Mem. 14.)  But the Amended Complaint does not actually say she refrained

from ingesting pharmaceuticals; rather, it states she took an over-the-counter allergy medication

"before she was formally baptized at 21 years old."  (FAC ¶¶ 48–50.)  And even drawing

Plaintiff's desired inference, she nowhere alleges a religious belief that conflicts with taking

medication.  (*See generally id*.)  *See Marte*, 2022 WL 7059182, at *3 (allegations that plaintiff

was a "Born-Again Christian" and that she opposed vaccination did not plausibly state a

*conflicting* religious belief).  Second, Plaintiff cites several purportedly similar cases where

courts have denied motions to dismiss.  (Pl's Mem. 17–19.)  But those cases either involved

more detailed allegations than Plaintiff presents here or did not examine whether the plaintiff

adequately alleged a conflicting religious belief.  In *Gardner-Alfred*—the one similar federal

case—the analogous plaintiff alleged a moral objection to vaccines based on her Catholic faith,

similar to Plaintiff's objections here, yet raised a "particular" concern that the vaccines were

derived from "aborted fetal cells," which "any individual Catholic may refuse."  *Gardner-Alfred*,

651 F. Supp. 3d at 699 (internal quotations omitted); *see also Grullon v. City of New York*,

No. 156934/2022, 2023 WL 1795710, at *4 (N.Y. Sup. Ct. Feb. 03, 2023) (noting that the

plaintiff stated his belief "that the vaccines were developed using stem cell lines from unborn babies," thereby "explain[ing] why taking any of the available vaccines would violate his religious beliefs" (quotation marks omitted)).  And while Plaintiff's remaining cases involve similar beliefs, none examined whether the claimants plead a prima facie case of discrimination. Instead, they all address whether the *employer* provided an adequate explanation for denying religious exemptions.  *See, e.g.*, *Schiefer v. The Bd. of Educ. of the City Sch. Dist. of the City of New York*, No. 155983/2022, 2022 WL 5004384, at *2 (N.Y. Sup. Ct. Oct. 04, 2022) ("[T]he Citywide Panel determination[] does not state a sufficient reason for denying the accommodation request.").[9]  Accordingly, this additional material in Plaintiff's briefing does not push her allegations over the line to plausible.

In a similar vein, Plaintiff spends several pages arguing that Discovery's response to her exemption request was irrational and lacked specificity.  (Pl's Mem. 17–21.)  Although Discovery's response certainly leaves something to be desired, it is unclear what this objection has to do with Plaintiff's prima facie case.  The relevant prima facie question for Title VII purposes is whether Plaintiff has alleged a sincerely held "religious" belief.  *See Algarin*, 678 F. Supp. 3d at 508.  Theoretically, an employer's cursory response to an exemption request could affect other parts of the analysis, like its ability to satisfy the undue hardship inquiry.  *See Dennison*, 2023 WL 3467143, at *5 (explaining "undue hardship is an affirmative defense" on which the defendant bears the burden of proof).  Likewise, Plaintiff's claim that Discovery "took

---

[9] Plaintiffs in these cases filed petitions under New York C.P.L.R. Article 78, which allows individuals to challenge state or local administrative determinations because they are "arbitrary and capricious," among other grounds.  *See Ward v. City of Long Beach*, 20 N.Y.3d 1042, 1043 (N.Y. App. Div. 2013).  Due to the focus on the employer, the Court does not find these cases relevant to whether the plaintiff-employee has adequately alleged a religious basis for her objection to vaccination.  *See id.* ("[T]he issue is *whether the action taken* had a 'rational basis' and was not 'arbitrary and capricious'" (emphasis added)).

prejudicial steps to prevent . . . Plaintiff from clarifying her religious beliefs," may make it hard for Discovery to disclaim notice of those beliefs.  (See Pls' Mem. 13 (emphasis omitted).)  But neither issue relates to the first step of Plaintiff's showing.  It may also be that Plaintiff, given her frequent citation to New York cases, is conflating Title VII with Article 78 proceedings.  While irrationality is fair game in the latter type of action, *see* N.Y.C.P.L.R. § 7803, Title VII requires a showing of discrimination based on religion, or another protected trait, *see* 42 U.S.C. § 2000e-2. Those are "different legal standards" and satisfying one does not necessarily satisfy the other. *See DeMaria v. New York State Unified Ct. Sys.*, No. 23-CV-3627, 2024 WL 1076543, at *6 (S.D.N.Y. Mar. 12, 2024) (finding the plaintiff's "Article 78 Petition does not embed a Title VII claim, and a finding of religious discrimination within the meaning of Title VII is not required for [a plaintiff] to prevail under Article 78").

All told, Plaintiff does not face a high bar.  The Court is bound to accept Plaintiff's stated beliefs as sincere and hold those issues for summary judgment or trial.  *See Vasquez*, 2024 WL 1348702, at *6.  And that deference extends to the convictions underlying one's objections to vaccination.  All Plaintiff need provide is an allegation of a "religious basis" for her belief that vaccines would violate the sanctity of her body, as opposed to a "subjective evaluation" based on "secular or scientific principles."  *See Mason*, 851 F.2d at 51 (quoting *Yoder*, 406 U.S. at 215–16).  And Plaintiff simply has not done so in this case.  Plaintiff's Title VII discrimination claim is dismissed.

The last question is whether to grant leave to amend.  Throughout her papers, Plaintiff claims she was not given "an opportunity to sufficiently explain her beliefs" to Discovery (Pl's Mem. 23; *see also* FAC ¶ 51), and notes that some of the motion-to-dismiss cases cited above involved more substantial pleading-stage records than the one here, (Pl's Mem. 22); *see Ellison*,

692 F. Supp. 3d at 558 (noting the plaintiff provided "supplemental information" to support his initial exemption request); *see also Fallon*, 877 F.3d at 489 (noting that the district court dismissed a similar case following a two-hour hearing).  Plaintiff, of course, has had every opportunity to explain the full extent of her beliefs in this case.  And she already amended once after Discovery put her on notice of this deficiency.  (*See* Letter Mot. for Conference at 1–2 (Dkt. No. 9).)  Nevertheless, the Court is acutely aware of its limited pleading-stage role and will not rush to a conclusion about the "religious" nature of Plaintiff's objection to vaccines if there is something more to be said.

### 3.  Retaliation

Discovery also seeks to dismiss Plaintiff's retaliation claims.  (Def's Mem. 6–7.) Plaintiff alleges that she engaged in protected activity by requesting a religious exemption and that Discovery retaliated against her in two ways: (1) by "prematurely terminating [her]," (FAC ¶ 144); and (2) by submitting false information in opposition to her request for unemployment benefits, (*id*. ¶ 146).  The Court lays out the relevant law and addresses each theory in turn.

Title VII's anti-retaliation provision prohibits an employer from "discriminat[ing] against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter[.]" 42 U.S.C. § 2000e-3(a).  In other words, "Title VII forbids an employer to retaliate against an employee for . . . complaining of employment discrimination prohibited by Title VII[.]"  *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006).  Courts analyze claims for retaliation pursuant to Title VII under the familiar framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) ("Federal and state law retaliation claims are reviewed under the burden-shifting approach of *McDonnell Douglas*[.]").  "Under the first step of the *McDonnell Douglas* framework, the

23

plaintiff must establish a prima facie case of retaliation[.]" *Id.* at 844 (citation omitted). Once the plaintiff has done so, "the burden shifts to the employer to articulate some legitimate, non-retaliatory reason for the employment action." *Id.* at 845 (citation omitted). "The employee at all times bears the burden of persuasion to show a retaliatory motive." *Cox v. Onondaga Cnty. Sheriff's Dep't*, 760 F.3d 139, 145 (2d Cir. 2014). "As with other claims analyzed under the *McDonnell Douglas* framework, the allegations need only give plausible support to the reduced prima facie requirements." *Thomson v. Odyssey House*, No. 14-CV-3857, 2015 WL 5561209, at *20 (E.D.N.Y. Sept. 21, 2015), *aff'd*, 652 F. App'x 44 (2d Cir. 2016) (summary order)(quotation marks omitted). Retaliation claims under Title VII and the NYSHRL are subject to the same standard. *See Goonewardena v. N.Y. Workers Comp. Bd.*, 258 F. Supp. 3d 326, 343–44 (S.D.N.Y. 2017), *aff'd*, 788 F. App'x 779 (2d Cir. 2019). The Court therefore evaluates the substance of each of Plaintiff's retaliation claims—whether under Title VII or the NYSHRL—congruently.

To establish a prima facie case of retaliation, the plaintiff must show that: "(1) [s]he was engaged in an activity protected under Title VII; (2) [her] employer was aware of [her] participation in the protected activity; (3) the employer took adverse action against [her]; and (4) a causal connection existed between the protected activity and the adverse action." *Crosby v. Stew Leonard's Yonkers LLC*, 695 F. Supp. 3d 551, 571 (S.D.N.Y. 2023). Accordingly, "for a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against [her], (2) 'because' [s]he has opposed any unlawful employment practice." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (citation omitted). To establish the causal connection, Plaintiff "must plausibly allege that retaliation was a 'but-for' cause of the

employer's adverse action." *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 332–33 (S.D.N.Y. 2020). A plaintiff may establish causation either through direct evidence of retaliatory animus or through indirect evidence, by showing that discriminatory treatment closely followed the protected activity. *Id.* at 333. "A plaintiff's burden at this prima facie stage is de minimis." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (italics omitted). "The Supreme Court has held that in the context of a Title VII retaliation claim, an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega*, 801 F.3d at 90 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)); *see also Hicks v. Baines*, 593 F.3d 159, 162 (2d Cir. 2010) (same). Accordingly, "an action need not affect the terms and conditions of a plaintiff's employment for purposes of a retaliation claim." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 n.6 (2d Cir. 2010).

There is no meaningful dispute that Plaintiff's first theory—that she was terminated because she requested a religious exemption—is not actionable. Courts have consistently held that plaintiffs cannot establish but-for causation where they are terminated pursuant to a policy that pre-dates any protected activity. *See, e.g.*, *Adams v. New York State Unified Ct. Sys.*, No. 22-CV-9739, 2023 WL 5003593, at *4 (S.D.N.Y. Aug. 4, 2023). The logic works like this: when an employer establishes a vaccine requirement and an employee fails to comply, the employee's termination "follow[s] ineluctably from the policy" regardless of whether the employee requests a religious accommodation. *See id.* In other words, the adverse action is set in motion *before* the allegedly protected activity occurred. *Id.* (citing *Belton v. Borg & Ide Imaging, P.C.*, 512 F. Supp. 3d 433, 446 (W.D.N.Y. 2021) ("It is well-settled that an adverse employment action cannot serve as the basis for a retaliation claim if the action was set in motion

25

before a plaintiff engaged in protected activity." (quotation marks and alteration omitted));

*Cayemittes v. City of New York Dep't of Hous. Pres. & Dev.*, 974 F. Supp. 2d 240, 262

(S.D.N.Y. 2013) (same), *aff'd*, 641 Fed. Appx. 60 (2d Cir. 2016) (summary order); *see also*

*Heron v. Medrite Testing, LLC*, No. 21-CV-9471, 2022 WL 1214179, at *5 (S.D.N.Y. Apr. 25,

2022) ("[W]here the adverse action was already ongoing at the time of the protected activity . . .

logic precludes any inference of causation." (alteration adopted) (quotation marks and citation

omitted)); *Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 722 (S.D.N.Y.

2020) ("In essence, if an employer's conduct before and after an employee complaint is

consistent, the post-complaint conduct is not retaliatory." (alteration adopted) (quotation marks

omitted)).[10]  Here, the Amended Complaint makes clear that Plaintiff was terminated for failure

to comply with a policy first announced on September 9, 2021, (FAC ¶ 40), before she engaged

in any protected activity, (*see id*. ¶ 41).  "Because the policy applied to all employees regardless

of whether they had engaged in protected activity, [Plaintiff] has not plausibly pleaded a

connection between [her] invocations of [her religious beliefs] and [her] termination."  *See*

*Sharikov v. Philips Med. Sys. MR, Inc*., 103 F.4th 159, 171 (2d Cir. 2024) (considering a

"company-wide vaccine policy," finding plaintiff failed to state an ADA retaliation claim, and

noting Title VII "utilizes the same standards as ADA claims").

    Plaintiff's second theory must also be dismissed.  In its opening brief, Discovery argued

that its opposition to Plaintiff's application for unemployment benefits did not constitute an

"adverse employment action" for purposes of Title VII.  (Def's Mem. 7.)  Similar cases generally

hold that "mere opposition to a former employee's application for unemployment insurance

---

[10] Plaintiff does not dispute any of this as a legal matter.  Her only objection is that
Discovery's vaccination requirement was not enforceable, (Pl's Mem. 11–12), which the Court
has addressed above, *see supra* Section II.B.1.

benefits, particularly when the employee ultimately receives benefits, does not rise to the level of

an adverse employment action." *Bright-Asante v. Saks & Co., Inc.*, 242 F. Supp. 3d 229, 244

(S.D.N.Y. 2017) (quoting *Battacharia v. Pernod Ricard USA, LLC*, No. 13-CV-7222, 2015 WL

4879204, at *11 (S.D.N.Y. Aug. 13, 2015)), *aff'd*, 855 F. App'x 40 (2d Cir. 2021) (summary

order).  That said, a few cases have concluded that opposition to an application for employment

benefits "could conceivably amount to an adverse action" where it is "materially adverse" under

the circumstances.  *See, e.g.*, *Swain v. Town of Wappinger*, No. 17-CV-5420, 2019 WL 2994501,

at *13 (S.D.N.Y. July 9, 2019); *see also Brown v. JPMorgan Chase Bank, N.A*., No. 12-CV-544,

2013 WL 4009795, at *8 (E.D.N.Y. Aug. 5, 2013) (concluding the "seven months plaintiff spent

without [unemployment benefits] could qualify as an adverse action for retaliation purposes").

Regardless of the circumstances alleged[11], however, Discovery asks the Court to deem this claim

abandoned.  (Def's Reply 10.)  And the Court grants that request, as Plaintiff entirely fails to

respond to Defendant's argument in Opposition.  (*See generally* Pls.' Mem.)  *See also Barreto v.*

*Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 807 (S.D.N.Y. 2021) ("A court may, and generally

will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that

the claim should be dismissed." (alterations and citation omitted)); *Laface v. E. Suffolk BOCES*,

No. 18-CV-1314, 2019 WL 1959489, at *8 (E.D.N.Y. May 2, 2019) ("In the Second Circuit, a

plaintiff's failure to respond to contentions raised in a motion to dismiss constitute[s] an

abandonment of those claims." (alteration and quotation marks omitted) (collecting cases)).

Accordingly, Plaintiff's Title VII retaliation claims are dismissed without prejudice

---

[11] An allegedly fraudulent response to Plaintiff's application could certainly qualify as an adverse action, but Plaintiff does not allege anything of that nature.  *See Steele v. Schafer*, 535 F.3d 689, 686 (D.C. Cir. 2008) (holding that a "false report to the D.C. Office of Unemployment Compensation contesting [plaintiff's] unemployment benefits . . . can support a retaliation claim").

### 4. State Law Claims

Plaintiff also alleges parallel state law claims under the New York Executive Law, §§ 296-d, et seq., and the New York City Human Rights Law. (*See* FAC ¶¶ 155–218.)  In light of the Court's dismissal of Plaintiff's Title VII claims, the Court declines to exercise supplemental jurisdiction over these state and city law claims.  *See* 28 U.S.C. § 1367(c)(3) ("District courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction . . . .").  "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Lara-Grimaldi v. Cnty. of Putnam*, No. 17-CV-622, 2022 WL 17541815, at *4 (S.D.N.Y. Dec. 6, 2022) (alteration adopted) (quoting *Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013)); *see also One Commc'ns Corp. v. JP Morgan SBIC LLC*, 381 F. App'x 75, 82 (2d Cir. 2010) (summary order) ("If all of a plaintiff's federal claims are dismissed, a district court is well within its discretion to decline to assert supplemental jurisdiction over any state law claims . . . .").

### III.  Conclusion

For the foregoing reasons, Discovery's Motion is granted.  To the extent Plaintiff has a good faith basis for filing a second amended complaint alleging additional facts regarding her Title VII discrimination and retaliation claims, she must do so within 30 days of this Opinion & Order.  The amended complaint will replace, not supplement, the complaint currently before the Court.  It therefore must contain all of the claims and factual allegations Plaintiff wishes the Court to consider.  If Plaintiff fails to abide by the 30-day deadline, the claims that have been dismissed could be dismissed with prejudice.

The Clerk of the Court is respectfully directed to terminate the pending Motion, (Dkt. No. 18).

SO ORDERED.

Dated:    September 25, 2024
          White Plains, New York

_____
          KENNETH M. KARAS
          United States District Judge

29